IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHELTER MUTUAL INSURANCE COMPANY PLAINTIFF

v. Case No. 3:10-CV-03089

SARITA TAYLOR; RON TAYLOR; and DEVOE YOUNGBLOOD DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is the question of whether this Court has subject matter jurisdiction in this action. The Court raised this question, *sua sponte*, and ordered the parties to file simultaneous briefs on the issue of subject matter jurisdiction. The Court has reviewed Plaintiff's Complaint (Doc. 1), Defendants Sarita Taylor and Ron Taylor's Answer and Counterclaim (Doc. 3), Defendant Youngblood's Answer and Counterclaim (Doc. 5), Plaintiff's Memorandum Brief (Doc. 12), Defendant Youngblood's Memorandum Brief (Doc. 13), and Defendants Sarita Taylor and Ron Taylor's Memorandum Brief (Doc. 14). For the reasons set forth below, the Court finds that it does not have subject matter jurisdiction in this action; therefore, Plaintiff's Complaint, along with the Defendants' Counterclaims, are DISMISSED without prejudice for lack of jurisdiction.

## I. BACKGROUND

The facts based on Plaintiff Shelter Mutual Insurance Company's ("Shelter") Complaint (Doc. 1) are as follows: Shelter issued a homeowners insurance policy ("the Policy") to Defendant Youngblood and Defendant Sarita Taylor (formerly Youngblood) in 2007. Defendants Sarita Taylor and Ron Taylor were later married and resided in the residence covered by the Policy. The residence and contents were destroyed by fire in 2009. As a result of the fire loss, Sarita Taylor signed and

executed a Proof of Loss and submitted it to Shelter. In July 2010, Shelter issued a mortgage payoff draft to the First National Bank of Harrison in the amount of $66,422.92 pursuant to the Policy. Shelter later determined from an investigation that the fire had two points of origin and that the Proof of Loss concealed and misrepresented material facts regarding the cause of the fire. In August 2010, Shelter wrote a letter to Sarita Taylor denying the claim. Shelter's Complaint seeks a declaratory judgment that the insurance policy is void based on a violation of the terms and conditions of the Policy, and seeks a judgment against the Defendants in the amount of $66,422.92 which was paid to Defendants' mortgagee. Defendants Sarita and Ron Taylor filed an Answer denying the allegations in the Complaint and asserting a compulsory counterclaim[1] seeking the face value of the dwelling in the amount of $197,800 less the $5,000 deductible, the policy limits for personal property in the amount of $108,790 less the $5,000 deductible, a 12 percent penalty, and attorneys' fees. (Doc. 3). Defendant Youngblood filed an Answer denying the allegations in the Complaint and asserting the same counterclaim as that put forth by Sarita and Ron Taylor. (Doc. 5).

Shelter alleges in its Complaint that this Court has jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000. (Doc. 1, para. 1).

**II. DISCUSSION**

This Court has an affirmative duty to ensure that any claims before it are within its subject matter jurisdiction. *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986). Under 28 U.S.C.

---

[1] Under Fed. R. Civ. P. 13(a), a counterclaim is compulsory if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction." Defendants' counterclaims arise under the same Policy from which Shelter derives its claims and do not require adding any other party. The Court finds, therefore, that Defendants' counterclaims are compulsory.

§ 1332(a)(1), district courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." The question of subject matter jurisdiction in this case concerns the "amount in controversy," since jurisdiction is based on diversity of citizenship, and the citizenship of the parties is not in dispute. "[W]hen challenged by the court or the defendant, in all cases originally commenced in a federal court, the plaintiff bears the initial burden of showing that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed jurisdictional amount; it must do so with competent proof." 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3702.2 (4th ed. 2011).

Shelter's Complaint seeks two forms of relief. First, Shelter seeks a declaratory judgment that the insurance contract between the parties is void because Defendants violated the provision in the Policy concerning fraud and concealment. Second, Shelter seeks a judgment in the amount of $66,422.92 which is the amount Shelter paid to Defendants' mortgagee pursuant to the Policy.[2] The Complaint does not seek any other damages from Defendants. The policy attached to the Complaint shows coverage for the dwelling in the amount of $197,800 and for personal property in the amount of $108,790. Defendants asserted compulsory counterclaims against Shelter for these amounts, plus a statutory penalty and attorneys' fees. Defendants' loss occurred in 2009, and it does not appear that Defendants had commenced litigation against Shelter before filing the compulsory counterclaims in this action. The Proof of Loss executed by Sarita Taylor was not a part of the Complaint.

While the face value of the policy exceeds the jurisdictional amount, Shelter seeks a

[2] Although not shown in the Policy attached to the Complaint, it appears to the Court that the First National Bank of Harrison must have held a mortgage on the insured property and must have been a loss payee under the policy.

declaration that the policy is void and seeks a recovery only of the amount it paid under the policy before its discovery of the alleged fraud and concealment in the Defendants' Proof of Loss. If the Court were to find that the policy is void for violation of the terms and conditions of the policy, the most Shelter could recover from Defendants would be the $66,422.92 that Shelter paid before it discovered the fraud and concealment. From the face of the Complaint, therefore, it appears to the Court that Shelter has not put the requisite amount into controversy in order for this Court to exercise jurisdiction. In fact, Shelter reiterates in its brief filed pursuant to the Court's Order that "Plaintiff's Complaint seeks to recover $66,422.92 as a result of Plaintiff's [sic] wrongful conduct and the subsequent mortgage payoff." (Doc. 12, p. 2).

Shelter, however, attempts to reach the jurisdictional amount by aggregating the amounts claimed in the counterclaims asserted by the Defendants.[3] Those counterclaims seek to recover the face value of the coverage under the insurance policy for the dwelling and personal property. The amounts are in excess of the jurisdictional amount. There is a split of authority in the circuits as to whether an amount asserted in a compulsory counterclaim can be used to satisfy the jurisdictional amount for diversity jurisdiction. *Compare Spectator Mgmt. Grp. v. Brown*, 131 F.3d 120 (3rd Cir. 1997) (finding that the amount of a compulsory counterclaim is part of the controversy set forth in plaintiff's complaint, and therefore may be included in the amount in controversy for jurisdictional

[3] Shelter also argues that the Court should consider attorneys' fees and a 12 percent statutory penalty when determining the amount in controversy. Shelter, in its Complaint, does not make a claim for either attorneys' fees or a statutory penalty, nor do they provide any competent proof to substantiate their claim that attorneys' fees would be recoverable in this action or amount to enough to reach the jurisdictional minimum when aggregated with their damages claim. Furthermore, the Court finds that a 12 percent penalty, under Arkansas law, would not be applicable to Shelter's claims, as A.C.A. § 23-89-208(f) provides for a 12% penalty in cases brought by an *insured against an insurer*. The Court finds that the statute cannot be construed to provide for a penalty levied by an insurer against an insured.

purposes, where the defendant chooses to assert a counterclaim instead of moving to dismiss), *Geoffrey E. Macpherson, Ltd v. Brinecell, Inc.* 98 F.3d 1241 (10th Cir. 1996) (including defendant's counterclaim in jurisdictional amount); *with St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir. 1998) (finding counterclaims are subsequent events that should not be considered in evaluating the amount in controversy), *Boudin v. South Point, Inc.* 2009 WL 1635927 (S.D. Ala. 2009) (finding counterclaims cannot be considered in determining amount in controversy), *Continental Ozark, Inc. v. Fleet Supplies, Inc.*, 908 F. Supp. 668 (W.D. Ark. 1995) (finding that the amount at stake in a counterclaim may not be used in determining the amount in controversy), *Oliver v. Haas*, 777 F. Supp. 1040 (D.P.R. 1991) (finding that no part of the required jurisdictional amount may be met by considering a defendant's counterclaim). It does not appear that the Eighth Circuit has ruled conclusively on this issue. The Eighth Circuit has held, however, that "in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue." *Usery v. Anadarko Petroleum Corp.,* 606 F. 3d 1017, 1018 (8th Cir. 2010). This is referred to as the "plaintiff's viewpoint rule." This does not mean, however, that a plaintiff's subjective valuation of a right, or even good-faith estimate of its objective value, is controlling. *Id.* at 1019. Rather, "[t]he question is the actual value of the object of the suit." *Id.* Shelter cites to certain cases in its brief arguing that there are certain situations in which the plaintiff's viewpoint rule is not applied. The authority cited by Shelter dates back to the 1960's. The Eighth Circuit has recently stated in *Usery* that, while the Court was "aware that there are cases in other circuits that hold that when the costs to a defendant of losing a case exceed the benefit that a plaintiff would gain by winning it, the amount in controversy can sometimes be measured by the defendant's costs . . . We have never endorsed this rule." 606 F.3d at 1019.

The Court recognizes that most of the reported cases on this issue arise in removal jurisdiction cases, and not in cases originally filed in federal court. This is because "[i]t is a rare occasion when a plaintiff brings a diversity jurisdiction suit in federal court . . . in the hopes that the defendant, rather than moving to dismiss on jurisdictional grounds, will counterclaim against the plaintiff in an amount that will meet the requisite amount in controversy." *Kaplan v. Computer Sciences Corp.,* 148 F. Supp. 2d 318 (S.D.N.Y 2001). Removal cases are construed more narrowly than originally filed cases so as to protect the plaintiff's choice of forum and to protect the state courts from usurpation by federal courts. *Shamrock Oil & Gas Corp. V. Sheets,*313 U.S. 100, 108-109 (1941); *Hurt v. Dow Chemical Co.,* 963 F.2d 1142, 1145 (8th Cir. 1992). The Court, however, having reviewed the relevant case law, finds the rationale of the majority of courts finding that a counterclaim may not be considered in reaching the amount in controversy in the removal context, to be persuasive in the context of cases originally filed in federal court.

In *Spectator Management Group*, one of the few cases addressing the issue of consideration of a counterclaim in the non-removal context, the Third Circuit Court of Appeals reasoned that the amount of a compulsory counterclaim should be considered in determining the amount of controversy, because a defendant who chooses to file a counterclaim instead of a motion to dismiss makes their claim a part of the controversy set forth in the plaintiff's complaint. 131 F.3d at 124. This reasoning is contrary to the principle that jurisdiction is determined from the face of the plaintiff's complaint at the time of the filing of the complaint. As the Eighth Circuit has stated, "the plaintiff is the master of the complaint." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Events taking place subsequent to the filing of the complaint should not be considered in determining whether the Court has jurisdiction. *Powell v. State Farm Fire and Cas. Ins. Co.*, 2010 U.S. Dist.

LEXIS 6796 at *3 (W.D. Ark. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S 283, 289-290 (1938)). "[I]f a plaintiff's complaint asks for less than the jurisdictional amount, only the sum demanded is in controversy . . ." *Usery*, 606 F.3d at 1018 (internal quotation omitted). To allow consideration of the amount of a compulsory counterclaim would be to breathe life into a complaint even though subject matter jurisdiction did not exist when the complaint was originally filed. The Court therefore rejects the reasoning of the Third Circuit in *Spectator Management Group*.

The Taylor Defendants state in their memorandum brief that they admitted diversity jurisdiction on the mistaken assumption that the compulsory counterclaims satisfied the jurisdictional amount. Youngblood argues in his memorandum brief that the Court lacks subject matter jurisdiction. It is apparent that none of the Defendants would have chosen the federal forum to pursue their claims against the Shelter. However, since Shelter was the first party to file suit, Defendants were compelled to file a compulsory counterclaim in federal court. Although Defendants could have filed a motion to dismiss under Rule 12 (b)(1), the Court finds that any failure to file a motion to dismiss is not dispositive, because subject matter jurisdiction must be determined from the face of the plaintiff's complaint, and parties cannot waive a lack of subject matter jurisdiction by consent. If the Court were to allow Defendants' counterclaims to satisfy the jurisdictional amount for diversity jurisdiction, it would force Defendants to litigate their claims in a forum they did not choose. In the Eighth Circuit, as stated in *Usery*, the amount in controversy must be determined by looking to the actual value of the object of the suit. 606 F.3d at 1019. The actual value of the object of this suit is the amount Shelter paid under the Policy and now seeks to recover, which by its own admission totals $66,422.92.

Although Shelter also seeks a declaratory judgment on the validity of the insurance policy, it is clear to the Court that the true object of Shelter's suit, as set forth in the Complaint, is to recover the $66,422.92 it paid to Defendants' mortgagee before denying Defendants' Proof of Loss based on fraud and concealment. It is not legally possible for Shelter to recover more than the jurisdictional amount since Shelter's recovery would be limited to the amount paid under the Policy, as there are no other recoverable damages against the Defendants. Simply stated, the amount put into controversy by Shelter's Complaint in this case is $66,422.92. The Court finds, therefore, that Shelter has not met its burden to show that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount. In other words, the Court finds – to a legal certainty – that Shelter's claim is for less than the jurisdictional amount, and the counterclaims filed by Defendants in this case cannot be considered to cure this fatal jurisdictional defect. The amount in controversy in this case is, therefore, less than the amount required by statute for this Court to exercise jurisdiction.

IT IS THEREFORE ORDERED that Plaintiff's Complaint is DISMISSED without prejudice for lack of subject matter jurisdiction.

IT IS SO ORDERED this 23rd day of January, 2012.

/s/ P. K. Holmes, III

P.K. HOLMES, III
UNITED STATES DISTRICT JUDGE